ELLIS, Respondent, vs. THE NORTHERN PACIFIC RAILROAD COMPANY, imp., Appellant.

*May 3 — May 20, 1890.*

*(1, 2) Action to quiet title: Parties: Joinder of causes of action: Void deed.*
*(3) Counties: Donation of lands to railroad.*

1. In an action to quiet title to land all persons interested in the subject matter adversely to the plaintiff may be made defendants, and the fact that defendants' claims arise from different sources and are in conflict with each other, or that one of the defendants claims all the land and the others separate parcels thereof, does not render their joinder as defendants improper, or make the complaint multifarious.

2. Under sec. 3186, R. S., the action to quiet title may be maintained against one claiming under a void deed.

3. A conveyance of its lands by a county as a donation to a railroad company is void; and the legislature, having no power to authorize such donation in the first instance, cannot by a subsequent statute validate the conveyance.

APPEAL from the Circuit Court for *Douglas* County. The facts are stated in the opinion.

For the appellant there was a brief by *Catlin & Butler*, attorneys, and *I. C. Sloan*, of counsel, and oral argument by *Mr. Sloan*. They contended, *inter alia*, that the complaint sets out distinct, independent, and unconnected causes of action. The controversy between the plaintiff and the railroad company recognizes the fact that the county owned the lots when it conveyed to the railroad company, and relates only to the validity of that conveyance. The controversy between the plaintiff and the other defendants, respectively, is as to whether the tax deeds to the county were sufficient to extinguish the original title, and this controversy is still further complicated by conflicting claims between such other defendants. The complaint is therefore multifarious. Story's Eq. Pl. sec. 271; *Saxton v. Davis*, 18 Ves. 80; *Banks v. Walker*, 2 Sand. Ch. 347; *West v. Randall*, 2 Mason, 181; *Att'y Gen. v. St. John's College*, 7 Sim. 241; *Ward v. Duke of Northumberland*, 2 Anst. 469; *Harrison v. Hogg*, 2 Ves. Jr. 323; *Cambridge W. Works v. Somerville D. & B. Co.* 14 Gray, 193; *Pope v. Leonard*, 115 Mass. 286–90; *Winsor v. Bailey*, 55 N. H. 218; *White v. Curtis*, 2 Gray, 467; *Salvidge v. Hyde*, Jac. 151; *S. C.* 5 Mad. 138; *Pearse v. Hewitt*, 7 Sim. 471; *Whaley v. Dawson*, 2 Sch. & Lef. 367–71; *Dilly v. Doig*, 2 Ves. Jr. 486; *Lull v. Fox & Wis. Imp. Co.* 19 Wis. 101; *Hubbell v. Lerch*, 58 N. Y. 237. The legislature had power to authorize the county to convey the land in question to the railroad company. There is no difference in principle whether money is donated to a railroad company, or the county is authorized to subscribe for stock. The whole question in both cases is whether the purpose or use of the money is public or not. *Queensbury v. Culver*, 19 Wall. 83; *Railroad Co. v. Otoe*, 16 id. 667; *Olcott v. Supervisors*, id. 678; *Louisville v. Savings Bank*, 104 U. S. 469–79:

*Fairfield v. Gallatin Co.* 100 id. 47; *Moultrie v. Fairfield,* 105 id. 370–80.

For the respondent there was a brief by *D. E. Roberts,* and oral argument by *Mr. Roberts* and *W. F. Bailey.*

Cole, C. J. This is an action to quiet title to certain lots of lands described in the complaint. The plaintiff alleges that he is the owner and in the actual possession of the lands, deriving his title from the county of Douglas under certain deeds. He sets out, not only his own chain of title, but also the title of the different defendants to the action. The defendants derive their title from different sources, and their claims are in conflict, though they are all interested in the subject matter of the litigation adversely to the plaintiff. The defendant Bradford appeared and answered; the defendant Sage made a general appearance for himself; and the railroad corporation filed a demurrer to the complaint on the ground of misjoinder of causes of action, and also upon the further ground that the complaint does not state a cause of action. The demurrer was overruled by the circuit court, and from the order so overruling the demurrer this appeal is taken.

The first question to be considered is as to the multifariousness of the complaint. It is insisted that the complaint unites perfectly independent and distinct causes of action, which cannot be joined. To this objection the learned circuit judge gives a complete and satisfactory answer in his opinion filed in the case. He says, in substance, that in cases of this character the object sought is to bring all parties before the court who are interested in the subject matter of the action adversely to the plaintiff, to the end that all interests may be determined and all parties bound by a single decree; and that a court of equity in such cases has power to determine the rights of all the parties, including

the conflicting rights of the defendants as between each other. This, we think, is a correct view of the law upon this subject. All the defendants, though their respective claims spring from different sources, have a common interest in the point in litigation, and ought to be joined in order to settle the plaintiff's title. The fact that the railroad company claims all the lands, and the other defendants claim separate parcels, does not render the joinder of all as defendants improper, nor make the complaint multifarious. This is the fair result of the decisions in *Winslow v. Dousman*, 18 Wis. 457; *Blake v. Van Tilborg*, 21 Wis. 672; *Hamlin v. Wright*, 23 Wis. 492; *Bassett v. Warner*, 23 Wis. 673; *Leinenkugel v. Kehl*, 73 Wis. 238. "A complaint does not improperly unite several causes of action which relates to matters of the same nature all connected with each other, and in which all the defendants are more or less interested or concerned, though their rights in respect to the general subject of the action may be different, and some may be directly interested only in a part of the general claim." *Blake v. Van Tilborg*, 21 Wis. 672. We do not think the complaint is open to the objection of being multifarious.

The other ground of objection raises the question as to the validity of the company's deed from the county of Douglas. It appears that the county offered and agreed to convey to the railroad company all lots and lands belonging to it which had been acquired by deed, and to which the county had held undisputed title for two years, upon condition that the company, by the 1st day of January, 1882, would construct, complete, and equip a railroad from the Northern Pacific Junction, entering this state, and running therein down the St. Louis and Nemadji rivers to the bay of Superior, at or near the mouth of the Nemadji river, thence to Connor's Point, along or near the westerly side of said bay, with a depot and convenient connec-

tions with docks and piers. The lands were conveyed by the county in pursuance of this agreement, and it is said that the transaction was, in effect, but a donation by the county of its property to the company, to secure the building of the branch of the railroad designated; and the question is, Could the county board of supervisors of the county dispose of the property of the county in this way by donating it to the railroad company? There is no pretense that it was in the nature of a subscription to the stock of the company. In the case of *Whiting v. S. & F. du L. R. Co.* 25 Wis. 167, this court held that the power of taxation could not be exerted to raise money for the purpose of donating it to a railroad company, even when the legislature authorized it. In that case the county authorities were restrained from issuing negotiable securities, which created a county debt to be paid by taxation, though the court had, upon the strength of adjudications elsewhere, sustained the validity of municipal subscriptions to the stock of railroad corporations. But such subscriptions were sustained solely on the ground that their validity had been affirmed by many of the highest and most respectable courts in the land, and such vast pecuniary interests had become involved and were dependent upon these decisions that this court felt bound to follow them, while regarding as unsound the principle which they laid down. And while the distinction between a stock subscription and the donation or other appropriation of public money or corporate property to a railroad corporation is not very distinct and obvious, yet we are unwilling to extend a bad rule of law a particle beyond where the courts had carried it, and shall therefore adhere to the doctrine of the *Whiting Case.* Besides, that case has been fully approved in subsequent cases in this court. *Phillips v. Albany,* 28 Wis. 340; *Rogan v. Watertown,* 30 Wis. 260; *Bound v. W. C. R. Co.* 45 Wis. 543. There is nothing to distinguish this case or to take it out

of the decision in the *Whiting Case;* for if the county could not donate money or securities to a railroad corporation, it could not give it its lands, which are the property of the county.

It was suggested by the eminent counsel for the railroad company that the federal supreme court had laid down a different rule, and had, in effect, held that in principle there was no difference between a subscription to stock of a railroad company, paying such subscription in money or bonds, and donating such money or bonds to the company; and that to avoid conflict in the opinions of this and that court, and the evil consequences which may result from it, this court should recede from the doctrine laid down in the *Whiting Case.* We fully appreciate the inconvenience which may arise from the want of harmony in the views adopted by the court of this state and the federal courts on this subject, but we are unwilling to change the rule established in the *Whiting Case.* It is a matter of regret that courts have sustained municipal subscriptions to the stock of railroad corporations, for it seems like a perversion of the object for which municipal governments are established, and the practice has often led to great mischief and oppression. But we can go no further than we have in sanctioning a bad principle. Whether or not there is solid ground for the distinction between the case of donating money or property to a railroad company, and subscribing to its stock and paying in money or bonds, the distinction has been made, and we feel bound to abide by it.

In this case, the county, at the time of making the donation and the execution of the deed in question, had no authority from the legislature thus to dispose of its property; but it is claimed this defect was cured by ch. 150, Laws of 1883. That act does attempt to validate the conveyance made by the county to the railroad corporation, and confirm the title in the grantee. But if the legislature could

not authorize the county in the first instance to donate its lands to the railroad company, it could not cure or make valid such donation after it had been made. A curative statute must be confined to the cases where the legislature might previously have authorized the act. Where the defect is in the nature of a mere irregularity in the proceedings, it may be cured. "If the thing wanting or which failed to be done, and which constitutes the defect in the proceedings, is something the necessity for which the legislature might have dispensed with by prior statute, then it is not beyond the power of the legislature to dispense with it by subsequent statute; and if the irregularity consists in doing some act, or in the mode or manner of doing some act, which the legislature might have made immaterial by prior law, it is equally competent to make the same immaterial by a subsequent law." Cooley, Const. Lim. (5th ed.), 458 *et seq.* It is clear that the principle laid down by the learned author above does not reach this case; for, by the rule of the *Whiting* decision, it was beyond the power of the legislature to authorize the county board to donate its money or property to a railroad company, and of course it could not, by a subsequent act, cure a thing which it could not originally authorize to be done. This proposition is so obviously sound as to require no argument to support it.

If the deed from the county was void, still the plaintiff would have the right to have the court so adjudge, for the purpose of quieting the title. Sec. 3186, R. S., secures to him that relief.

It follows from these views that the order of the circuit court must be affirmed, and the cause remanded for further proceedings.

*By the Court.*— It is so ordered.