SIMON and others, Respondents, vs. WEAVER and others, Appellants.

*September 14—October 4, 1910.*

*Corporations: Fraud of promoters: Equity: Action by stockholders: Pleading: Joinder of causes of action: Parties.*

1. A complaint in equity by stockholders in a corporation, which alleges in apt terms that defendants, the promoters and officers of the corporation, collusively and fraudulently, without giving any equivalent therefor, conspired to and did deplete the treasury of the corporation of large sums of money, by procuring options on mining properties in their own names and selling the same to the corporation at a large profit, taking so-called commissions upon sales of its stock, and issuing orders upon the treasury in their own favor, for which there was no consideration; and which seeks to recover back for the benefit of the corporation the sums so paid out and to cancel the orders still outstanding, states a cause of action.

2. Where such complaint states wrongs against the corporation only and relief on its behalf only is prayed, there is but one primary

right sought to be enforced and but a single cause of action stated, although a number of wrongful acts by which the fraudulent scheme was consummated are set out and different forms of relief are asked.

3. Where in such a case it is evident from the allegations of the complaint, showing that the defendants are the directors and control the corporation, that the action would not be brought or prosecuted in good faith by the corporation, it is properly brought by stockholders and the corporation is a proper party defendant.

APPEAL from an order of the circuit court for Sauk county: E. RAY STEVENS, Circuit Judge. *Affirmed.*

This is a suit in equity brought by three stockholders on behalf of the defendant the *Iron King Mining Company,* a corporation, to recover damages sustained by the corporation on account of the alleged fraud of the defendants, who were promoters of the corporation, and for other relief. The complaint alleges that the plaintiffs are stockholders in the defendant the *Iron King Mining Company,* a Wisconsin corporation; that this action is brought by the plaintiffs on their own behalf as stockholders of the said *Iron King Mining Company* and on behalf of said *Iron King Mining Company* and for the benefit of said corporation, the *Iron King Mining Company,* and for the benefit of all stockholders in said corporation similarly situated to these plaintiffs; that the defendants *I. Weaver, William Alexander, Adolph Fey, F. A. Philbrick,* and *Charles Wild* were and are the officers and directors of the said defendant the *Iron King Mining Company,* a corporation; that said corporation was incorporated under the laws of Wisconsin on April 27, 1903, and the articles of organization were signed by *I. Weaver, William Alexander, Adolph Fey, F. A. Philbrick,* and *Charles Wild,* who will hereinafter be referred to as the promoters; that prior to said date and on the 4th day of April, 1903, said promoters, in pursuance of the fraudulent scheme hereinafter set forth, had held a meeting, at which they pretended

to elect themselves directors and to elect the defendants *Charles Wild, Adolph Fey, F. A. Philbrick,* and *I. Weaver* president, vice-president, secretary, and treasurer, respectively, of said corporation, the same being some twenty-three days prior to the filing of the articles of organization of the said corporation; that thereafter the said promoters, in pursuance of a fraudulent plan and scheme by them entered into for the purpose of cheating and defrauding said company and the other stockholders thereof, continued to act as directors and officers of said corporation, and, by reason of the stock fraudulently taken by them as hereinafter more fully set forth, they continued to have and to execute full and absolute control of said corporation and continued to hold all offices thereof, and sought to and did in every way render said corporation helpless so far as any action might be taken against them, the said promoters; that said promoters continued so to act and to elect and to re-elect themselves as directors and officers of said company up to and including April 10, 1906; that thereafter and on March 29, 1907, said promoters, in pursuance and fulfilment of said plan and scheme, pretended to hold a meeting of the stockholders of said company for the purpose of dissolving said corporation, but what action was taken and the effect thereof plaintiffs are not advised, by reason of the fact that no record of the same was kept; that subsequent thereto and on the 12th day of October, 1908, notice was duly published as by the statutes required, by James A. Frear, secretary of state, that the corporate rights and privileges granted to said corporation would be forfeited on January 1, 1909, unless an annual report of said corporation was filed prior thereto and payment made of forfeit fee and cost of publication; that, as plaintiffs are advised and believe, said promoters, as directors and officers, were fully informed of said proceedings had and taken by said secretary of state, and though in duty bound so to do, yet, by reason of said fraudulent plan and scheme to cheat

and defraud as aforesaid, they failed and neglected to comply with said notice, and that the corporation is now dissolved except for the purpose set forth in sec. 1764, Stats. (1898), and that, as provided by said Statutes, the said promoters are still the directors of the affairs of such corporation and the officers thereof; that the purpose of said corporation, as expressed in the said articles of organization, was to prospect for and mine iron ores and to buy and sell or option lands for such purposes, and to do any and all things necessary to the carrying on the general mining business; that the said articles provided that the capital stock of said corporation should be $200,000 and the same should consist of 200,000 shares, each of which shares would be of the face or par value of $1; that said promoters had not and none of them had had any mining experience or any practical knowledge of the conduct of a mining business prior to the organization of said corporation, and then had and at all times mentioned in this complaint had no plan, purpose, or intention of entering upon the conduct of such business, but that within a few months preceding the organization of said corporation and the said pretended meeting thereof held on the 4th day of April, 1903, said defendant promoters had conceived the fraudulent plan and scheme of securing certain options on lands without consideration or for a purely nominal consideration and then to organize said corporation, and, in pretended consideration of the transfer of said options so secured, to fraudulently and secretly cause to be issued to themselves a large majority of the stock of said corporation without paying or giving or transferring to said company anything therefor, and fraudulently and by false and fraudulent misrepresentation procuring others to purchase the remaining shares of stock for money consideration and to reserve to themselves a commission therefrom, and likewise fraudulently and secretly to issue or cause to be issued to themselves, for various pretended purposes and services on behalf of said corporation,

such money as others might be induced to pay into the treasury of said corporation, and in this manner and by kindred practices in harmony therewith to loot the treasury of said proposed corporation and cheat and defraud said corporation and the other subscribers and stockholders who might be induced to pay their money into the treasury of said corporation in exchange for its stock; that pursuant to said scheme to cheat and defraud the said corporation and its future stockholders and in carrying out said plan so formed, the said promoters prior to April 4, 1903, acquired two certain options to drill and prospect for iron ore.

The complaint then sets out a description of the two options, denominating the first as the "Domke option" and the second as the "Kuehn option," and proceeds to allege:

Both of said options recite that they are given for a good and valuable consideration and recite no further or other consideration, and plaintiffs allege that said promoters and none of them ever parted with any money, property, or other thing of value in exchange for or payment of said options; that under each of said options the said promoters acquired no right in and no possession of said premises during the term thereof, except so far as was necessary for the purpose of prospecting for iron ore, such prospecting to be done by means of a diamond drill, or otherwise, and the said parties agreeing to leave said premises in as good condition as the same were before said prospecting was done as near as practicable and to pay for the damages that might be done to crops by such prospecting; that, as appears from said option, said promoters acquired no surface or agricultural rights in said premises thereunder of any kind or description whatsoever and acquired solely the right to drill and prospect thereon for iron ore, and that said promoters and none of them at no time ever acquired any further, other, or different interest therein; that by an assignment executed and acknowledged April 4, 1903, the said promoters, in furtherance of their

said plans and schemes to cheat and defraud the said company and the stockholders thereof, assigned or pretended to assign to the *Iron King Mining Company,* the said proposed corporation, the same then having no legal existence, the said options, the said assignment reciting that the same was for $1 and other good and valuable consideration, but reserved in said assignment the surface rights and a royalty of any or all ores that might be mined therefrom, at certain terms specified in the complaint,—the said promoters at that time well knowing that they had no surface rights of any kind, order, or description.

That on May 27, 1903, being more than a month after the organization of the said corporation and after the election of the said defendant promoters as directors thereof and while they were acting as such directors and officers, the defendant *Charles Wild,* being then the president of said company, but acting for and on behalf of the remaining defendant promoters, all of whom were then directors of said company, and all except the defendant *William Alexander* being also officers and all the officers of said company, and pursuant to the scheme of the said promoters to cheat and defraud the said corporation and its stockholders, caused to be executed to him by the North Freedom Land & Mining Company a like option under like terms and conditions to drill on (here follows description of the lands), the same being known and hereinafter described and referred to as the "Quandt option;" that the consideration for said option was expressed therein as a good and valuable consideration; that as a matter of fact, as plaintiffs are informed and believe, the said *Charles Wild* and the said remaining promoters and no one of them ever parted with any money, property, or any other consideration of any kind, order, or description for said option; that if any money was paid therefor the same was paid directly out of the treasury of the said defendant corporation by the said *I. Weaver* as the officer of said company, the *Iron King Min-*

*ing Company,* as appears from order No. 2 in the order book of said corporation and by order No. 16; that notwithstanding said fact, and said defendant promoters and all of them well knowing that said option and all right, title, and interest therein belonged to said corporation by reason of said corporation having paid therefor, and in pursuance of their preconceived scheme of cheating and defrauding said corporation, the *Iron King Mining Company,* and any stockholder unfortunate enough to pay his money into its treasury, the said promoters, in execution of their scheme to cheat and defraud as aforesaid, caused the said *Charles Wild* to execute a pretended assignment of an undivided four-fifths interest in said last named Quandt option to the remaining promoters on the 11th day of June, 1903, although the said corporation had previously and on the 2d day of June, 1903, paid, as plaintiffs are informed and believe, the sum of $500 for said option; that subsequent thereto and on July 20, 1903, said promoters, in furtherance of their preconceived scheme to cheat and defraud the said *Iron King Mining Company* and the stockholders thereof, pretended to assign all the right, title, and interest in all royalties held by them under the Domke and Kuehn options, and likewise, by a separate instrument in writing, pretended to assign and convey to the said *Iron King Mining Company* all their right, title, and interest under the Quandt option, retaining therefrom the surface rights, both of said assignments being expressed to be for $1 and other valuable considerations, notwithstanding that said defendants and all of them at said time knew that they had not and none of them had any surface rights in said Quandt option, and that whatever rights might exist under said option were already vested in the said corporation, the *Iron King Mining Company;* that the said Domke option continued in force for the term of two years from the date thereof, being the 26th day of January, 1903, it being provided that the same might be extended for the further term

of two years at the option of the party of the second part by giving written notice and paying the sum of $25 as and for a consideration of such extension; that the said Kuehn option provided that the same should be in force for the term of one year from the date thereof, to wit, the 23d day of February, 1903, and that the same might be extended for the further term of two years at the option of the parties by giving written notice and paying the sum of $1 as a consideration for such extension; that the said Quandt option, dated May 27, 1903, provided that the same should continue in force until September 1, 1904; that said Quandt option further provided that drilling should commence on or before October 1, 1903, and that before a drill should be placed on said premises for prospecting purposes the sum of $5 should be paid to the said Quandt and a receipt from said Quandt taken and given to the North Freedom Land & Mining Company.

That thereafter and on the 21st day of January, 1904, the said promoters, fearful lest any of the money of said corporation had escaped them as a result of the various operations hereinafter more fully detailed, well knowing that they had not and never had had any surface or agricultural rights in the premises covered by the various options, and to further carry out their scheme to cheat, defraud, and rob the corporation and its stockholders, passed a resolution on said date as directors of said company, and, pursuant thereto, assigned or pretended to assign their alleged pretended and imaginary surface rights under the said Quandt and Kuehn options for and in consideration of the sum of $15,000, said resolution providing that the same should be paid out of the company's moneys not otherwise appropriated on orders drawn; that subsequent to the organization of said company and beginning on the 15th day of August, 1903, the said promoters secretly caused to be issued to themselves and to others for their benefit, entirely without consideration to the said company, stock of said company of the aggregate par value of

$125,000; that no record or minutes of said transaction or the reason therefor was ever entered upon the books or records of said corporation, and the said stock so taken by said promoters and by them issued to others for their benefit was taken and issued entirely without consideration of any kind, order, or description, and in pursuance of the preconceived intent and carrying out of the plan of said promoters to cheat, defraud, and rob the said corporation and its stockholders; that the said stock, at the time the same was so wrongfully taken by said defendant promoters, was, as plaintiffs are informed and believe, of the cash or market value of fifty cents per share, and the value of the entire amount so taken was the sum of $62,500; that said promoters on and after said dates likewise sold, on behalf of the said corporation, stock of the par value of approximately $26,000, and, pursuant to their scheme to defraud said corporation and its stockholders, retained from the price at which said stock was sold certain sums as pretended commissions for the sale thereof; that the total amount of moneys so retained as pretended commissions by said defendant promoters, as plaintiffs are informed and believe and allege the fact to be, was the sum of $1,300; that said promoters likewise issued and caused to be issued to themselves orders of said corporation amounting in the aggregate to $19,678.60; that, as plaintiffs are informed and believe, there was paid to said promoters on account of said orders, out of the treasury of said company, the sum of $4,678.60, and that there remain outstanding as charges against the said company orders in the sum of $15,000; that of said sum of $4,678.60, approximately $1,777.85 were or may have been issued for the benefit of the said corporation; that as to the remainder thereof in the sum of $2,900.75, as plaintiffs are informed and believe and allege the fact to be, they were totally without consideration and were issued solely for the benefit of the said promoters and in pursuance of their scheme to cheat and defraud the

corporation and its stockholders; that, as plaintiffs are informed and believe and allege the fact to be, the total amount of the value of said stock taken by said promoters, the sums retained by them on account of pretended commissions, and the sums realized by them on account of the orders fraudulently issued to themselves without any consideration to said corporation, all as aforesaid, is the sum of $66,700.75.

That this action is brought by the plaintiffs and not by the *Iron King Mining Company,* the defendant corporation above named, for the following reason, to wit: that the board of directors of said corporation, together with all the officers thereof, is at the present time, and ever since its organization has been, composed of members all of whom were promoters of said corporation above named and all of whom are defendants herein, and that the same board is made up of and absolutely controlled and dominated by them, the said promoters; that this action, if brought by the present board of directors or the present officers of the said corporation or by any board of directors or by any set of officers that could be elected by the stockholders of said corporation, would not be prosecuted in good faith or for the benefit of said corporation, by reason of the fact that the said board of directors and the said defendant promoters are one and the same persons and the identical persons who formed and organized and always controlled the company for the said purpose of cheating and defrauding the company and its stockholders, and that, having fully accomplished the said plans and schemes, plaintiffs have made no demand or request upon said corporation or board of directors thereof to bring this action, well knowing such demand would be useless, and for this reason the said corporation, the *Iron King Mining Company,* for whose benefit and the benefit of whose stockholders this action is brought, has been made a party defendant hereto. .

Wherefore plaintiffs demanded judgment on behalf of said corporation against the defendants *I. Weaver, William*

*Alexander, Adolph Fey, F. A. Philbrick,* and *Charles Wild* (1) for the sum of $66,700.75 with interest from August 15, 1903; (2) that said defendants and all of them be enjoined and restrained from paying to themselves any money on account of the said $15,000 of orders outstanding or on any other account whatsoever, and that the orders in said sum of $15,000 be canceled and annulled; (3) that the plaintiffs recover all damages and losses sustained by them by reason of the fraud of the said defendant promoters; (4) that the plaintiffs be allowed, and that there be adjudged out of the sum recovered for said corporation from the said defendant promoters, a reasonable attorney's fee for the payment of plaintiffs' attorneys herein; (5) that plaintiffs recover all other costs and disbursements by them incurred on account of this action of every nature whatsoever; and (6) that the plaintiffs and said defendant *Iron King Mining Company* have such other relief as may be just and equitable.

The defendants demurred to the complaint on the grounds (1) that the court has no jurisdiction of the person of the defendants or any of them or the subject of the action; (2) that the plaintiffs have not the legal capacity to sue; that if any cause of action exists it should be brought in the name of the *Iron King Mining Company;* (3) that there is a defect of parties plaintiff in this, that the said *Iron King Mining Company* should be made a party plaintiff; (4) that several causes of action have been improperly united in said complaint; (5) that the said complaint does not state facts sufficient to constitute a cause of action; and (6) that the said action was not commenced within the time limited by law and is barred by the provisions of sec. 4222, Stats. (1898).

From an order overruling the demurrer the defendants appeal.

For the appellants there was a brief by *Grotophorst, Evans & Thomas,* and oral argument by *E. A. Evans.*

For the respondents there was a brief by *Aylward, Davies, Olbrich & Hill,* and oral argument by *M. B. Olbrich.*

VINJE, J. 1. This is a suit in which the powers of a court of equity are invoked to right wrongs flowing from the fraudulent scheme of promoters and officers of a corporation to diminish its assets to their own profit. The complaint in apt terms alleges that the promoters collusively and fraudulently conspired to, and actually did, without giving any equivalent therefor, deplete the treasury of the corporation of the various sums therein set out, and it demands that these sums be paid back by the wrongdoers into the treasury of the corporation. Tested by the principles laid down by this court in numerous cases, it cannot be said that the complaint fails to state facts sufficient to constitute a cause of action, and the demurrer on that ground was properly overruled. *Zinc C. Co. v. First Nat. Bank,* 103 Wis. 125, 79 N. W. 229; *Pietsch v. Milbrath,* 123 Wis. 647, 101 N. W. 388, 102 N. W. 342; *Hayward v. Leeson,* 176 Mass. 310, 57 N. E. 656.

2. Appellants strenuously contend that the main cause of action is one at law for damages for an executed conspiracy, while joined to this are other causes of action for which equitable relief is demanded, and rely upon the case of *Pietsch v. Krause,* 116 Wis. 344, 352, 93 N. W. 9, to sustain the proposition that such causes of action cannot be joined. An examination of that case will disclose that the complaint first set out a cause of action and asked relief in behalf of the corporation, and then proceeded to state a cause of action for damages and demanded relief in behalf of the plaintiffs individually, and it was held that the two could not be joined. But in this case wrongs against the corporation only are set out, and relief in its behalf only is asked. Clearly the *Pietsch Case* is not analogous.

It is, however, a misconception of the complaint before us to say that it states more than one cause of action. True, a

number of wrongful acts are set out, and different forms of relief are demanded, but that is only alleging the various ways in which the fraudulent scheme was consummated, and demanding appropriate relief for each separate wrong flowing therefrom. It is not alleging separate causes of action. As was said by this court in *Zinc C. Co. v. First Nat. Bank,* 103 Wis. 125, 139, 79 N. W. 229:

"There is but one subject of action,—the conspiracy to defraud and its consummation to the damage of plaintiff. All the allegations of fact are parts of the presentation of that one subject. The test of whether there is more than one cause of action stated or attempted to be stated in a complaint is not whether there are different kinds of relief or objects sought, but whether there is more than one primary right sought to be enforced or one subject of controversy presented for adjudication."

To the same effect are *Gager v. Marsden,* 101 Wis. 598, 77 N. W. 922; *Adkins v. Loucks,* 107 Wis. 587, 83 N. W. 934; *Herman v. Felthousen,* 114 Wis. 423, 90 N. W. 432. In these cases the question has been so fully discussed, and the distinction between alleging separate causes of action and alleging one subject of wrong out of which separate wrongs may flow calling for different relief is so clearly pointed out, that it is deemed neither necessary nor advisable to further extend the discussion of the subject.

3. It is evident from the allegations of the complaint that the corporation would not have brought nor prosecuted the suit in good faith, and it was therefore properly brought by the plaintiffs, and the corporation was a proper party defendant. *Luther v. C. J. Luther Co.* 118 Wis. 112, 94 N. W. 69.

The last ground of the demurrer was expressly waived upon the oral argument, and it is not deemed necessary to discuss the others.

*By the Court.*—Order affirmed.